Thank you, Your Honors. May it please the Court, Robert Waller for the appellants in the case, Erin Leigh-Pink and Tana Emerson. We're here on a 12-beat dismissal of our action by the District Court. Principally, the District Court dismissed the case on the basis that plaintiffs, the appellants, failed to adequately allege recoverable damages. I think that it's important for the panel to recognize that it is well established under Nevada law that a business public accommodation such as a hotel, like the respondents here, have a legal duty and have had such legal duty for almost a hundred years to disclose any problems or conditions with their premises that present a foreseeable risk of harm to their guests and invitees. There's really no dispute in this case based on the pleadings, which is where we're at, which the court must take for face value and as true, that the respondents failed to disclose the uncontrollable outbreak of Legionella bacteria in the hotel's water system. I think it's important to understand that the nature of the problem was such that it infected virtually the entire hotel, and that included the guest rooms, which was the disease caused by the Legionella bacteria. The District Court dismissed the case because the plaintiffs had their rooms comped. They were members of a rewards program at Rio, and so they were required to pay only the resort fee. Now, there's a presumption and a representation that the resort fee only covers certain aspects and facilities within the hotel. The District Court believed that because the appellants, the plaintiffs in the case, did not suffer any adverse uses of those facilities, they didn't suffer any damages. And I think that that was error, and I think the panel should reverse because the Nevada Deceptive Trade Practices Act is very clear that the plaintiffs can recover any damages that they've suffered as a consequence of an deceptive trade practice. What are your damages here? That's my question. I mean, I guess the theory is they would not have come to the hotel had they been fairly duly warned, and therefore they shouldn't have to pay anything, even though they used the facility. That's the difficulty that I am trying to get over, is they used the facility. They had full benefit. They didn't get injured. Obviously, anyone who contracted Legionnaires, they would have, you know, damages, but that's not the damages you're claiming. You're just claiming economic damages for purchasing a or purchasing something that was not, it didn't have the same value, or they just get it no matter what. It doesn't matter whether it had the same value. Well, I think that to answer your honor's question, the damages are in the form principally of an unjust enrichment. An unjust enrichment is very clear. The law is very clear in Nevada that if a if a party receives a benefit that they would not unjust enrichment is a is a I mean, that seems to me to be a claim, but that's not that's not a form of damages are you seeking? Correct. We're saying that under a fraud concept that the plaintiffs never would have parted with their money at all to stay at the Rio had they known of the dangerous condition that existed in the hotel rooms. And so they should be reward. They should recover the money that they gave to the Rio that they otherwise would not have paid. And so they are out of pocket. They also they they also received a benefit. I mean, I don't know how much benefit they got. Maybe this doesn't undermine your claim. I mean, I'm not asking these questions to suggest that you, you know, there's not something here that needs to be worked through. But I'm just trying to flesh out the damage claim here because I get it if they didn't use it, if they paid for something and didn't use it, but where they paid for it and used it. I mean, how do you I mean, your clients received some benefit, too. So is there going to be an allotment for that? And, you know, I mean, is they I just don't understand how that's going to break out. I think to answer your question, your honor. Yes, there is one of the areas that we were deprived of the opportunity to conduct discovery on is what is is what exactly are covered by the resort fee? There was a representation by the defense by the respondents that the resort fee only covered such things as the Internet use access to a facility, a spa facility, workout facility, and the telephone. And we don't know what else the resort fee covers. Well, when you figure that out, tell the rest of us because I think the entire world would like to know what these resort fees pay for it. I don't I don't know that any consumer actually knows. It's just an extra fee. I think if I could interject a question, I'd like to get your perspective on this issue. Preliminarily, I'll just mention that decades ago, I heard a wise judge tell me that the law of damages throughout the United States was somewhat somewhat of like a murky ocean. That was difficult to see through and it was hard to find the law consistent state to state. And my question here is because we're applying Nevada law in this case is controlling. Are there any unsettled issues of Nevada law that bear on damages on which you would urge that we certify questions to the Nevada Supreme Court? I believe there may be a an unsettled issue on the issue of whether or not the term any damages under that act envelops or is limited to either the benefit of the bargain rule or the out-of-pocket rule. Because the Nevada Deceptive Trade Practices Act is very clear, and your honor is absolutely right, to wade through the morass of what constitutes damages is a difficult task. To answer Judge in large part on what they were deprived of using and whether or not the hotel that they paid for was of an equal value for what they paid. If it's not worth the cost of the resort fee, then they've suffered damage, whether that's a full refund because to stay in a hotel that's uncontrollably infected, the water system is uncontrollably affected with Legionella bacteria is worth zero, then the deprived of the use of some of the facilities such as the pool or the public spa or other facilities that may be covered, which we don't know because we were deprived of the. But hold on, you're not alleging that you didn't get to use any of the facilities, are you? And your honor is absolutely right. We don't know what the resort fee is used to you. No, but it doesn't really matter because there's no allegation that they showed up and the pool was closed and so therefore they didn't get that benefit. I mean, there may be the pool may have, you know, not I don't know what a pool at a hotel with Legionnaires disease is worth compared to another, you know, pool. But there's no allegation that they were denied access to the facilities. That seems to be I don't know whether it's fatal, but that seems to be one of the main problems with if you go back and look at some of the cases, for example, the you know, the case where in Nevada, I believe it was where they they drove out to a car dealership because they were told that there would be some benefit there. It turned out that was false. Well, then they were able to get the cost of driving out to find out that they, you know, that there was some deception there. But here, even if there was deception, you know, if they knew about the Legionnaires disease and didn't and didn't convey that, what is the harm to the clients? They still used it and didn't contract Legionnaires disease. So I don't you know, it seems the cases just don't seem to match up and I can facts are is that the Legionnaires bacteria infected the hotel rooms themselves, the water system, the showers and the lavatory, the sink where where the guests are going to be required to brush their teeth and wash their face and take a hot shower. And as we know, that's for emotional damages, right? It's not as if they left the hotel and they thought, oh, my goodness, I've been brushing my teeth unknowingly with possibly salmonella tainted water. It's not that they're upset about it. You ultimately are saying they paid money they wouldn't have paid had they known. Right. Or they paid more than what that hotel room was worth. I think it's a I think it's a fallacy to distinguish between the resort fee and a room rate because you have to pay. What's the rack room rate? What would they have paid if their rooms hadn't been comped? And I'm confused. So the class action, all members of the class were comped rooms. Is that I mean. No, your honor, our understanding is that all class members were required to pay the resort fee, but you don't get to stay in the room unless you pay the resort fee. No, I understand that. But but if it's if it's a two hundred dollar room and then a thirty dollar resort fee and they're comped to two hundred dollars, you have to show well, don't you have to show that that the room was devalued, you know, 90 percent? Because I think that I think that also applies to the money they pay, period, whether it's categorized as a resort fee or a room rate, because they're not going to let you pass the front door and into your hotel room unless you pay the resort fee. So in a sense, what you're really paying for is the is the room. And as you know, I didn't read your briefs as making that distinction. When I first looked at this case, what occurred to me was there's only one contract here. The contract includes the resort's opportunity to get you in the casino. That's why they copped the room. It includes your opportunity to make money from getting into the casino. And then it includes these tangential services. But it's all one package. And I'm looking at your brief still and particularly the proceedings below. It seemed to me you were arguing that these are two separate contracts, not one. Well, no, I think we we tried to articulate in the opening brief for the panel that there is that there is literally no virtual distinction between the room rate that would be paid in the resort fee to stay at the hotel. And when and when somebody is induced into a contractual situation to stay at a hotel based on concealed information that would be material to them, then they've suffered damage. And and and Judge Navarro recently, while this case was pending on appeal, she ruled in in in switch limited versus uptime. I have the case site if the court's interested. It's four twenty six feds up third. Just give the case to the clerk. Very good. Judge Navarro ruled completely opposite to what she ruled in our case where she said a Nevada Deceptive Trade Practices Act case is a valid and viable claim when the plaintiff claims that they entered into a contract without having the full knowledge of of what the contractual terms were. And here the contractual terms, if we're looking in terms of contract, are they didn't disclose a material fact before the people, the plaintiffs paid their money. OK, counsel, I want to interject a question that's on my mind before before all your time's up, and I will give you a few extra minutes for rebuttal. But my question is this. Are there any allegations in the complaint that bear on whether the plaintiffs or the class suffer emotional damages or mental distress or anything of that nature? And is that cognizable under Nevada law? The answer is no, we did not plead any particular component of personal injury claims because that would be ill suited for a class action. That would be a mass action, but it wouldn't be a class action because they would destroy the typicality requirement necessary to certify a class under Rule 23. But I but I do believe that if the panel looks at what the transaction is and what information was concealed and how that information is material and whether that value of the hotel room that these people were paying for, regardless of how that money's categorized. And if that's zero, that's zero, that the district court should be reversed and we should, at a minimum, be given an opportunity to conduct discovery until we don't know what facilities were closed. I was a little bit of time, if I can, for rebuttal, I think your time's all used up, but I'm going to give you an extra two minutes for rebuttal so you can plan on that. But if Mr. Fama needs or wants an extra two minutes for his argument, you'll get it, too. Thank you, Your Honor. Thanks, we'll turn to the appellee. Thank you, Your Honor. Richard Fama from Cozen O'Connor on behalf of the defendant Rio Properties LLC. Your Honor, 50 years ago, the Nevada Supreme Court identified the measure of damages for fraud-based claims, and that is benefit of the bargain and out-of-pocket expenses. Can I ask you something? How is this case any different than what has become a very fashionable kind of consumer fraud case where someone buys a cervix or product based on something being advertised, and it turns out that that attribute was false, although the consumer got exactly the product he thought he was getting? For example, I've got a case now where root beer is sold with a vanilla label on it, made with real vanilla. And the claim is, well, no, it's not made with real vanilla. Well, the consumer got the soda, it tastes like vanilla, it says it's vanilla, but I've denied a motion to dismiss on that case because there are factual issues as to whether the consumer really would have bought the soda, even though he got vanilla-tasting soda. How is this any different than that? Well, because in this case, Your Honor, the plaintiffs got exactly what they bargained for. When they checked into that hotel, they bargained for everything, all the amenities associated with the resort fee, the internet, the gym, and the local telephone. Don't you think that they also bargained for clean amenities and clean gym and not, I mean, bring it into COVID, I hate to even bring it into COVID times, but if you hadn't have disclosed that you'd had an outbreak of COVID, I mean, don't you think that they would have a claim under those circumstances? Not that they received all the benefits that they bargained for. No, I don't. Okay, let me ask you this. Let me ask you this question. This may be the unusual case where the plaintiff's strongest claim is unjust enrichment, and the reason I think that might be the case is because, yeah, you can argue that the plaintiff got everything they bargained for, but you, your client, got more than they were supposed to get because they got the plaintiff, and they wouldn't have gotten the plaintiff if there had been an adequate disclosure. So is it fair that you get to get the money? I mean, suppose it was COVID. Suppose there was confirmed salmonella that you had not disclosed. Do you get to keep that money, even though the plaintiff realized the benefit of his bargain? Well, Your Honor, the bargain, the bargain in this case is for the amenities associated with the room, with the with the resort fee. The room rate was cut off. So here, they got all those amenities. It was the inducement to get the service contract, right? Well, even so, even so, they still, they still received everything that they bargained for. They received the internet, they received the gym use, and they received the local telephone calls, access to those local telephone calls. But they never would have spent that money. They never, they're claiming that they never would have spent that money. Well, then I bet I think that that type of argument ignores the benefit of the bargain analysis, and the out of pocket analysis that the Nevada that the Nevada Supreme Court has adopted. What about the case? I think it's out of Nevada, where the they go to an outlet store, I guess it is, and they were I don't remember the details, but they were advertising, you know, this is a purse normally for $200. We're selling it for $80. They buy the $80 purse, they go home, they realize, wait a second, they never were selling this purse for $200. It's not really a purse for $200. I got an $80 purse, but I wouldn't have bought an $80 purse for $80. I wanted a $200 purse for $80. Why isn't that case similar to this one, where the damages were recognized in that case? That in that case, Your Honor, and I'm not familiar with that case, but I'm based upon the facts that you've described, that would fall well within the the rubric of benefit of the bargain analysis adopted by the Nevada Supreme Court, that something was represented as being more than it was by a defendant, and the plaintiff got something less. So then they're entitled to the difference in value here, the plaintiff hasn't hasn't alleged that the room rate, I'm sorry, the resort fee is somehow negotiable or subject to fluctuations based upon demand or anything else. It's a fixed. Well, but isn't that something that discovery is warranted? I mean, I would imagine that just as the fee for staying at a hotel with, you know, an outbreak of, you know, name the disease would be discounted. Why wouldn't the same thing be true of a resort fee, that it would also be discounted because you go to a hotel assuming it's going to be, you know, safe. I mean, and that is within reason. And and Legionnaires disease seems to be something that would rise to the level of risk that would have to be disclosed. And in fact, your client seems to suggest that because once it found out, it did disclose. You the plaintiffs be entitled to discovery on when in fact, your client found out and what duty it had to disclose and what the value is of a room rate or of a resort fee based on the failure to disclose. Because your honor, again, they received everything that they bargained for with respect to the resort fee, what they received is effective of whether there was Legionella in the in the hotel or not. They received the same thing. If they had known the facts that your client concealed, the deal might have been altogether different. If there was a public announcement that there's some risk of salmonella at this hotel, your client might well have said, you know what, we'll eat the resort fee. We just want you in here and we'll give you $500 to go to the gaming table. We'll stake you for $500 so that we can get you into our place. Despite this, this possibility of salmonella, the deal would be different. So they didn't really get what they bargained for because they could have gotten a better deal. There's there's again, there's there's no allegation in the complaint that that resort fee is is is a fluctuating fee like you might expect in a room rate, which they didn't pay. Right. I mean, we, you know, as consumers, we've come to understand that room rates are often tied to to demand in a hotel. There's no allegation that that resort rate that resort, let's say the resort, let's say the resort fee covers the pool and the Internet and they were able to use the Internet, but the pool had to be shut down for Legionnaires disease. Would the plaintiffs have a claim then? Well, that that's not the factual situation. I understand that. I'm asking you, though, under that hypothetical, would they have a claim? But I would have to give it some thought. But I tend to think if they were deprived of the benefits associated with the resort fee, then they may have a claim. But that's not the case here. The plaintiffs haven't alleged that they didn't have access. The same access that they would have had had they had had the hotel not had Legionella in it. They just they haven't alleged any deprivation of access to anything. They have alleged, though, that the product was deficient. It was not as represented. I mean, what if what if they use the pool and then it Is your position that the only way they could recover is if they actually contracted Legionnaires disease or that that, you know, the fact that they took the risk of swimming in a pool that, you know, would have had the potential or some quantifiable potential of giving them the disease? Wouldn't that wouldn't they have a claim there? As long as they were able to take advantage of the the amenities associated with that resort fee, if the gym was open, the pool was open, you know, the Internet was working in the telephone, they can make telephone calls, then I would say no. So I have a question, if I may interject here, that is, okay, so let's assume they all got the amenities that were part of the room, however, they could impact their health. Assuming that's true, can a class not make a claim for the distress or emotional turmoil knowing about that would cost? Well, your honor, I don't know if I can answer that question now, because that's not the scenario we're dealing with. There is no claim for emotional distress here. And I don't think that such a claim would be susceptible to class certification. So I, I, it's just, it's just not something that's, you know, in the in the record here. Okay, thank you. But the problem I'm having with your argument is that you're really viewing the resort fee contract so narrowly, that it's divorced from the economic reality of what the parties thought they were doing, or at least what the plaintiff thought he was doing. Now, they thought that, yeah, we're copying the room. So I'll use the casino and probably lose some money like most people do. And I've also got to pay the resort fee. And that's one economic transaction, not, oh, did I use the internet? Did I have access to the internet? Did I have access to the pool? That's really not what this was about, is it? Well, I mean, no matter how you look at it, whether you group the resort fee and the room rate together into one transaction, or you separate them out into separate transactions, I think you come to the same result. They bargained for if we if we combine the two, they bargained for a room, a roof over their head, a warm place to sleep. And they bargained for all the amenities associated with the resort fee, and use and access to the to the casino to take your example even further. And they received all those benefits unencumbered. There's no allegation that that that blackjack tables were closed. There's no allegation that they couldn't access the internet. There's no allegation that there was leaks in their room. And there's no they under under Nevada case law under the out of pocket analysis, they received exactly what they bargained for. What I what I was struggling with in this case is I don't see any Nevada cases directly on point that would allow that either would, you know, say that the Nevada case is a neutral case, it doesn't fit nicely within other cases with potential exception of the unjust enrichment claim. Should we, Judge Gould had asked this question before, but should we certify this to the Nevada Supreme Court to determine, you know, for them to tell us under Nevada state law, whether Nevada state law would recognize claim in these circumstances? I think the Nevada Supreme Court has made clear that these claims, these types of claims are governed by the benefit of Oregon and out of pocket damages analyses. I think that's that's crystal clear. And what's your best case for that position? You mentioned, you know, one from 50 years ago, I guess. Right, Rondano versus Turk, there's Collins versus Burns, and there's Goethals versus Hawk. But that doesn't seem this. I mean, that just says what test should apply. It doesn't necessarily say whether in the facts is alleged here that that would satisfy that, that test or not. Or could. But I think it does. I think it does. And I think the examples that are the exceptions that plaintiff's counsel relies on sort of highlights how firmly entrenched the out of pocket damages analysis is where, you know, he cited the cases where the Nevada Supreme Court has gone beyond the out of pocket right, which doesn't exist here. Or in a case where, you know, there's a there's an appreciable or depreciable asset that's that's the subject of the litigation. So there might be some depreciation or or or appreciation that needs to be factored into in that analysis. But that doesn't you know, those those situations don't exist here. I see that my time is running out, but there is one one other issue I'd like to address. And that's really the threshold issue of plaintiff's failure to plead knowledge. I want the clerk to add two minutes to the to appellee's clock. Thank you, Your Honor. So plaintiff has attempted to plead that the defendant actually had knowledge of the Legionella bacteria in the hotel. And in doing so, they rely upon essentially two things. One is a Department of Health letter that was sent to the Rio on May 1st of 2017. And the only thing that that letter advised the Rio of was that one guest, not two that was mentioned in plaintiff's brief, one guest contracted Legionella. So I guess that stayed in the hotel contract that Legionella doesn't say that that guest contracted it at the hotel. And presumably that guest was exposed to all the other amenities that Las Vegas as a whole has to offer all the clubs, the casinos, the bars, the restaurants, the shows. So, you know, it's really a hard stretch to imagine that that one letter would give notice to. So, counsel, I agree with you, but let me ask this question. At some point, the hotel became on notice that it was in their water supply, whether it was on May 1st or May 15th or June. That's well, go ahead.  And that and that was there was a letter sent out by the Rio on July 5th of 2017, acknowledging that some recent testing and again, the letters dated July 5th, 2017. Some recent testing confirmed that there was Legionella in certain water systems of the hotel. Both Mr. Pink and Ms. Well, let me just start with Mr. Pink. He stayed at the hotel in May on May 12th to May 14th of 2017. And Ms. Emery stayed at the hotel from June. We don't know the exact date. It wasn't pleaded, but sometime in June of 2017, both of which predate that letter that defendant sent out. The only other stay that's that that's alleged in the complaint is Mr. Pink staying in the hotel at some point in December of 2017. There's nothing in the in the complaint to support the claim that the Rio was on notice of Legionella bacteria in the hotel at the time Mr. Pink stayed in the room in September of 2017. Isn't that essentially, though, a factual issue or at least a mixed question of fact and law as to whether the Rio knew enough to trigger a disclosure duty? Well, you know, the plaintiff in this case could plead fraud generally, right? We can see that, but they need something more than mere conclusions that we knew. And again, there's there's nothing in the record to suggest that that that that May 1st, 2017 letter, you know, imputed knowledge to them that there was that there was Legionella at the hotel. And certainly the letter that's dated in July saying, well, we have some recent test results that show Legionella doesn't doesn't impute knowledge of what what was in the hotel in September. A councilor, you're about a minute past the extra two minutes that I gave. So if there's any judge who has further questions, you should, of course. They should ask them and you should respond fully. But if not, we'll go to rebuttal from appellate and any question from Judge Nelson? No, Judge Kogan. No, thank you. Okay, then we'll thank Mr. Thank you. Thank you, Your Honor. In a sense, you may get the award for having traveled the farthest remotely today. Okay, thank you. I'm close with Judge Kogan there. I think we have to measure it as closely. We'll give those rewards to the advocates. The hardworking judges usually don't get recognition. Let's go forward with the appellate's rebuttal. Thank you. Thank you, Your Honor. A couple of things. Number one, the complaint in the introductory paragraphs, somewhere in the four to nine paragraph number range of the third amendment complaint, lays out in more than adequate detail the notice that the Rio had, when they had it, and the investigation that was being done by the Southern Nevada Health District. And so I think that it's a bit specious to say that the complaint doesn't allege proper notice to the claims of fraud. Is it your view that the mere inquiry letter raising the possibility by itself was enough to trigger the duty to disclose to potential customers? Your Honor, I think that the third amendment complaint adequately alleges it's not just a mere inquiry. The Southern Nevada Health District actually sent investigators to the Rio hotel, conducting water supply, water sample testing from various rooms, and found a number of rooms and evidence of legionnaires throughout the entire water system within the hotel. So the complaint alleges that they found legionnaires in early May. I didn't understand that to be true. I understood they came and told them about the risks associated with legionnaires. But I think the complaint is silent. Again, I'm not sure this is fatal, given what else has been alleged. I understood the complaint was silent as to when the hotel became aware that legionnaires actually was in there. And I would have a real problem if state law would require every hotel or business to disclose any investigation by a government agency. That seems a bit high. The question is, have you alleged enough here to suggest that at some point they had knowledge? I think, number one, we have alleged enough to show knowledge. And number two, I believe we pled facts to show that the investigators were out there doing water sampling and that the Rio was doing their own sampling. And I want to respond to, I think it was Judge Nelson's question, about the disclosure. And the important thing about that disclosure is that it was only sent to past guests of the hotel. Well, but that's because they said they'd addressed the problem. But they hadn't. And I think the facts bear them out. I do want to point the court to the Davis case, which the panel has asked on a couple of occasions about how the Nevada Supreme Court views the issue of out-of-pocket versus benefit of the bargain damages. And in the Davis case, the Nevada Supreme Court was very clear that sometimes those damages don't fit squarely into each category. So it's not a cookie-cutter application of damages principle into either the benefit of the bargain rule or the out-of-pocket rule. The court has to be somewhat flexible in going back to what Judge Gould prefaced his comments about. It's a murky sea. And so this isn't math. One plus one equals two when it comes to damages. I do want to also respond to Judge- Also, I'm just going to mention that the clock, the way these court clocks work, the time on that now is time over the two minutes. It's not time you have left. So you should be responding fully to inquiries from the judges. But if there are no further questions from my colleagues, I'd ask you to try to close your argument. Certainly. Without any further questions, I don't want to use it more and more than my time is allotted. All right. Do I hear any questions from Judge Kogan? No. Judge Nelson? No. Having heard none, I'd say it's a very interesting and challenging case. We appreciate both of the fine advocates and your arguments today. And this case shall now be submitted and the parties will hear from us in due course. Thank you. Thank you. Thank you.
judges: Gould, Cogan, Nelson